IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TINA COCKRELL                                                                                    PLAINTIFF

V.                                                                              Cause No.:1:09-CV-00132

WEYERHAEUSER CO.                                                                            DEFENDANT

MEMORANDUM OPINION

Presently before the court is Defendant's Motion for Summary Judgment [30]. After reviewing the motion, memoranda and responses, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff, Tina Cockrell, began working as a salaried employee at Defendant, Weyerhaeuser Co., in May of 1993. Salaried employees at Weyerhaeuser are expected to work forty hours a week. Originally, Plaintiff worked four, ten-hour days a week. In the fall of 2007, Plaintiff approached her supervisor, Mike White, about changing her work schedule to a five day a week position in order to facilitate more time at home with her son.

Plaintiff's schedule was modified but events in November of 2007 led her supervisor to question her hours worked. White notified the Human Resource Manager, Jo Nell Foster, and asked that she institute an investigation. Foster reviewed Weyerhaeuser's gate access records which show when each employee swipes his or her card upon entering and exiting the property. Her initial investigation revealed that Plaintiff was approximately 159 hours short of working forty hours a week between April 30, 2007, and November 9, 2007. Plaintiff informed Foster that she had documentation to justify the missing time and provided Foster with all of her records. After reviewing the records submitted by Plaintiff and gate access sheets, Foster reduced the time owed by Plaintiff to 101 hours.

Another meeting was held on December 12, 2007, between Plaintiff, her supervisor, Foster, and Kent Walker, the plant manager. During the meeting, the parties discussed Plaintiff's hours and poor working relationships. They also discussed a proposed contingency plan to address the discrepancies in Plaintiff's performance. The contingency plan called for drug and alcohol testing, forfeiture of merit pay increase, and submission to counseling. Plaintiff refused to consent to the counseling portion of the contingency plan. Foster informed Plaintiff that failure to abide by the contingency plan would result in the forfeiture of her employment. Plaintiff still refused to sign. Foster informed Plaintiff that she would be contacted, and Plaintiff left the building. Plaintiff never returned back to work even though she was never told she was terminated.

In January of 2008, Weyerhaeuser arranged a mediation meeting between Plaintiff and Al Harris, a manager from a separate location. No resolution was reached as a result of the meeting. However, in February, Kent Walker sent Plaintiff a letter inviting her to submit an alternative to the counseling requirement in the contingency plan. Plaintiff never responded to the letter. Plaintiff was notified of her right to sue by the EEOC in February of 2009. She then filed this action on May 18, 2009, asserting that she was discriminated against because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and also alleging defamation, infliction of emotional distress, and breach of employment contract. Defendant now moves the Court to grant its Motion for Summary Judgment as to all of the claims made by Plaintiff.

*Summary Judgment Standard*

The Court will grant summary judgment, "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party

seeking summary judgment must inform the district court of the basis for the motion and identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party opposing summary judgment must then go beyond the original pleadings, and cite "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Parties may not rely on conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments to defeat a motion for summary judgment. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., F.3d 1069, 1075 (5th Cir. 1994) (en banc); TIG Ins. Co. v. Sedgwick James of Wash., F.3d 754, 759 (5th Cir. 1994).

The Court will resolve factual controversies in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. If the nonmovant fails to provide any proof, then the Court will not "assume the nonmoving party could or would prove the necessary facts." Id. at 1075.

*Title VII Claim*

Under Title VII, it is unlawful "for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to prevail upon Title VII claims, plaintiffs may proffer direct or circumstantial evidence of discrimination. Turner v. Baylor Richardson Med. Ctr, 476 F.3d 337, 345 (5th Cir. 2007). In the absence of direct evidence, the Fifth Circuit employs the burden- shifting test established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Rutherford v. Harris County, 197 F.3d 173,

3

179-80 (5th Cir. 1999).

The McDonnell Douglas test entails three burden-shifting steps. Turner, 476 F.3d at 345. First, the plaintiff must establish a prima facie case of discrimination by showing that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was treated differently from others similarly situated or replaced by someone outside of the protected class. Carr v. Murphy Oil USA Inc., 269 F. App'x 378, 378 (5th Cir. 2008) (per curiam) (citing Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005)); McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Turner, 476 F.3d at 345. Finally, the burden shifts back to the plaintiff to rebut the non-discriminatory reasons provided by the defendant. McCoy, 492 F.3d at 557. "If the plaintiff can show that the proffered explanation is pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgement." Turner, 476 F.3d at 345.

Here, Plaintiff is an African-American woman; therefore, she falls within a protected class. Plaintiff was subject to a contingency plan after discovery of the missing hours. As that contingency plan denied Plaintiff merit pay increases for one year, it did affect a term or privilege of her employment, thereby satisfying the adverse employment action prong of the test. 42 U.S.C. § 2000e-2(a)(1). Plaintiff has also shown that she was qualified for her employment through her education, prior work experience, and fifteen years of positive reviews. In her complaint, Plaintiff contends that she was replaced by someone outside of the protected class. In her response to the Motion for Summary Judgment, Plaintiff also contends that she was treated differently from other employees similarly situated as no white workers were asked to submit to counseling or forced to follow

4

contingency plans as the result of failing to work the requisite number of hours. Therefore, Plaintiff satisfies the prima facie elements of a Title VII case.

Defendant successfully articulates a nondiscriminatory basis for the adverse employment action as Defendant contends that Plaintiff was placed on the contingency plan for time theft. Plaintiff acknowledged in her deposition that she was paid for hours that she did not work. Despite that acknowledgment, Plaintiff still maintains that Defendant used time theft as a pretext for the adverse employment action as other employees who lacked hours were not subject to contingency plans, counseling or forfeiture of employment. Plaintiff also claims that she had a prior agreement with her supervisor to work less than forty hours a week.

Defendant points to the employment records of other employees to show that time theft was not a pretext for the adverse employment action. Ken Dyer, a Caucasian employee at Weyerhaeuser, was placed on a contingency plan for failing to work approximately forty hours for which he had been paid over a twelve month period. Caucasian employees, Elin Snow, Neal Oswalt and Greg Arinder were all subject to contingency plans that included counseling for failing to meet company standards. Greg Arinder's employment was eventually terminated for failing to meet his counseling requirements. Plaintiff proffers no evidence to show that she and her supervisor agreed to allow her to work less than forty hours a week. Several email exchanges between Plaintiff and her supervisor are attached to the motion and response regarding her failure to meet the forty hour per week requirement for employment. Plaintiff never comments that she was allowed to work less than forty hours per week. In fact, Plaintiff asserts that she has met the forty hour per week requirement, and if she did not, her vacation time could be applied toward meeting the forty hour per week requirement. The Court will not assume that Plaintiff could prove that such an agreement was made

5

without any evidentiary basis. See Little, 37 F.3d at 1075 (holding that in a motion for summary judgment factual controversies will be resolved in favor of the nonmovant only if both parties have submitted evidence of contradictory facts).

Plaintiff further alleges that she felt that she was let go because of racial animosity; however, Plaintiff points to no proof to buttress her allegations. Plaintiff provides e-mails from other employees in which they notify Weyerhaeuser personnel that they will be leaving work early. However, absent proof to the contrary, the Court will not assume that these employees did not make up the hours, cover them with vacation time, or were not placed on contingency plans. Plaintiff also relies on an affidavit of her husband, Willie Cockrell, a twenty-five year veteran of Weyerhaeuser, to show that discrimination occurred. In the affidavit, Mr. Cockrell alleges that the Plaintiff was treated differently from similarly situated Caucasian employees; however, he provides no explanation as to how the discrimination occurred. He testifies that he "saw it with his own eyes," but does not describe what he saw. Plaintiff relies on conclusory allegations, speculation and unsubstantiated assertions to show that the issue of time theft was a pretext for racial discrimination. Conclusory allegations, speculation and unsubstantiated assertions do not defeat a motion for summary judgment. SEC, 10 F.3d at 1097; Little, F.3d at 1075; TIG Ins. Co., F.3d at 759. Therefore, the Court grants the Motion for Summary Judgment in regards to Plaintiff's Title VII claims.

*Defamation*

Plaintiff also brings a defamation claim of libel and slander. In order to prevail upon a defamation claim, a plaintiff must show (1) a false statement that has the capacity to injure plaintiff's reputation, (2) an unprivileged publication, (3) negligence or greater fault on part of the publisher, (4) "either actionability of statement irrespective of special harm or existence of special harm caused

6

by publication." Franklin v. Thompson, 722 So. 2d 688, 692 (Miss. 1998). In her deposition, Plaintiff claims that comments made during the December 12th meeting were defamatory in nature. Plaintiff alleges that Weyerhaeuser defamed her name by citing marginal performance as a reason for her termination. She further contends that as a result of that meeting her permanent record was annotated with the comment that her "aura reeked sadness and unhappiness."

In Mississippi, a privilege exists for communications between employers and employees. Bush v. Mullen, 478 So. 2d 313, 314 (Miss. 1985).

> The law guards jealously the right to the enjoyment of a good reputation, but public policy, good morals, the interests of society, and sound business demand that an employer, or his representative, be permitted to discuss freely with an employee or his chosen representative, charges against the employee affecting the latter's employment. On such occasions, there is qualified privilege, and statements made within the scope of the privilege, in good faith without malice, are not actionable. The truth or falsity of the communication are not involved so long as there is no bad faith or malice.

Killebrew v. Jackson City Lines, 82 So. 2d 648, 650 (1955). This privilege is not absolute, rather it is a qualified privilege for business communications based on the scope of the communication, and motivation behind the communication. Bush, 478 So. 2d at 314. The scope of the statements are restricted to the following:

> A communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty . . . if made to a person or persons having a corresponding interest or duty. . . .

Smith v. White, 799 So. 2d 83, 86 (Miss. 2001) (quoting Louisiana Oil Corp. v. Renno, 157 So. 705, 708 (1934)). Even if the communication fits within the scope of the qualified privilege for business communications, the privilege may still be eviscerated by a finding of malice which requires a knowledge of falsity or reckless disregard as to truth or falsity. Eckman v. Cooper Tire & Rubber Co., 893 So. 2d 1049, 1053 (Miss. 2005) (citing Hayden v. Foryt, 407 So.2d 535 (Miss. 1981)). The

7

use of strong words in describing a plaintiff's conduct does not prove the existence of malice. Id. Even angry or intemperate expressions are not enough, the evidence must show maliciousness. Id. The burden is on the plaintiff to prove the falsity of the statement in order to show malice. Id.

Here, the statements made during the December 12 meeting fall within the qualified privilege for business communications. The statements were made in the presence of Plaintiff, the Human Resources Manager, and two of Plaintiff's supervisors. Each of these persons had an interest or duty regarding the Plaintiff's conduct as they were responsible for her actions while at work, and responsible for personnel decisions. Plaintiff admits in her deposition that the statements regarding her conduct were not repeated to anyone outside of the meeting except for her husband, whom she informed. The Court notes that Plaintiff does allege that a permanent annotation was made to her record. However, she admitted in her deposition that she could only speculate as to its existence. Furthermore, Plaintiff has failed to provide any evidence to show that the statements were made maliciously. Additionally, despite the strong wording of Defendant's comments that Plaintiff's aura "reeked sadness and unhappiness," the wording itself is not enough to establish maliciousness. Plaintiff has failed to provide any evidence to establish a genuine issue of material fact in regards to the Defendant's claim of qualified privilege. Therefore, the Court grants Defendant's Motion for Summary Judgment on the defamation claims, as the Defendant is protected by a qualified privilege.

*Intentional Infliction of Emotional Distress*

Plaintiff also brings a claim for intentional infliction of emotional distress. She asserts that the actions of Defendant, by and through its agents, were done intentionally and in a manner to make Plaintiff's work environment stressful, oppressive and overbearing. In Mississippi, a one year statute of limitations applies to claims for the intentional infliction of emotional distress. Jones v. Fluor

Daniel Servs. Corp., 32 So. 3d 417, 423 (Miss. 2010) (affirming summary judgment for the defendant when plaintiffs brought an intentional infliction of emotional distress claim more than one year after they had been terminated from employment); CitiFinancial Mort. Co., Inc. v. Washington, 967 So. 2d 16,19 (Miss. 2007).

First, the Court notes that Plaintiff failed to respond to Defendant's Motion for Summary Judgment as to this claim. Furthermore, Plaintiff does not cite a specific date as to when the infliction of emotional distress occurred. Rather, she says that throughout her employment the actions of the defendant and its agents were hostile, and calculated. The Court finds that the last communication or contact between the two parties occurred in February of 2008, when a letter was sent to Plaintiff asking her to fashion her own contingency plan. Plaintiff did not respond and no contact occurred between the two parties subsequent to the receipt of that letter; therefore that would be the latest possible date for the infliction of emotional distress to occur. Plaintiff filed her complaint May 18, 2009. This is outside of the one year statute of limitation for the intentional infliction of emotional distress. Therefore, Defendant's Motion for Summary Judgment as to the intentional infliction of emotional distress claim is granted.

*Breach of Employment Contract*

Plaintiff also brings a claim for breach of employment contract. In her deposition, Plaintiff claimed that her employment contract with Weyerhaeuser provided that employees should be placed on an improvement plan before being placed on a contingency plan. Plaintiff has not provided any contract to show that this was company policy. Plaintiff cited "The Weyerhaeuser Workplace" brochure, and a "blue book" as the basis for this policy. However, the front page of "The Weyerhaeuser Workplace" provides:

9

> This overview is not intended as a contract between managers and employees. Policies, standards and guidelines may change at any time, with or without notice. The company may also, at its sole discretion, depart from policy from time to time.

Additionally, "The Weyerhaeuser Workplace" emphasizes "involuntary termination can occur for a number of reasons, including . . . . forgery, falsification of records . . ." Plaintiff has not responded to Defendant's Motion for Summary Judgment as to the breach of employment contract, and has not provided evidence of any contract outlining a progressive discipline program, including any evidence of the "blue book". Furthermore, in her deposition, Plaintiff admitted to being placed on an oral improvement plan prior to the contingency plan. Plaintiff has failed to provide any evidence to show that there is a genuine issue of material fact as to the existence of a contractual obligation to follow progressive discipline, or even that Defendant failed to follow such a policy if it existed. Therefore, the Court grants Defendant's Motion for Summary Judgment as to the breach of employment contract claim.

*Conclusion*

Plaintiff has not met the requisite showing for a race discrimination claim under Title VII. Likewise, Plaintiff has proffered no proof to show that the communications regarding her demeanor and work habits were not protected by qualified privilege. Plaintiff failed to file her claim for intentional infliction of emotional distress within the one year statute of limitations. Finally, Plaintiff has provided no evidence of an employment contract or even evidence of a breach of the policy alleged to have been enforced. Defendant's Motion for Summary Judgment is granted as to all claims, and the case is to be dismissed.

So ORDERED, this the 16th day of September, 2010.

                                                    **/s/ Sharion Aycock**
                                                    **U.S. DISTRICT JUDGE**